1

2

3

4

5

6

7

8                                 **UNITED STATES DISTRICT COURT**

9                                  EASTERN DISTRICT OF CALIFORNIA

10

LUSTER B. DAILY, JR.,
11                                                        Case No. 1:16-cv-01419-SKO
                  Plaintiff,
12
           v.                                            ORDER ON PLAINTIFF'S SOCIAL
13                                                        SECURITY COMPLAINT
NANCY A. BERRYHILL,
14   Acting Commissioner of Social Security,[1]

15                Defendant.                              (Doc. 1)

16

17   _____/

18

19

20                                    **I.       INTRODUCTION**

21          On September 23, 2016, Plaintiff Luster B. Daily, Jr. ("Plaintiff") filed a complaint

22   under 42 U.S.C. §§405(g) and 1383(c) seeking judicial review of a final decision of the

23   Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application

24   for Supplemental Security Income (SSI) benefits.  (Doc. 1.)  The matter is currently before the

25   Court on the parties' briefs, which were submitted, without oral argument, to the Honorable

26   _____

27   [1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of the Social Security Administration.
     *See* https://www.ssa.gov/agency/commissioner.html (last visited by the court on February 27, 2017).  She is therefore
     substituted as the defendant in this action.  *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20
28   C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper
     defendant").

Sheila K. Oberto, United States Magistrate Judge.[2]

## II.    FACTUAL BACKGROUND

On September 26, 2012, Plaintiff protectively filed an application for SSI payments, alleging he became disabled on June 9, 2006, due to back, neck, and heart problems and an injury to his right hip. (Administrative Record ("AR") 23, 197–205, 238, 250, 264.) Plaintiff was born on September 23, 1960, and was 52 years old on the date the application was filed. (AR 27, 39, 92, 197.) He graduated from high school and has no vocational training. (AR 42–43.) From January 2008 to March 2008, Plaintiff worked as a laborer at a retail store warehouse, and from 2006 to 2007, Plaintiff worked as a stocker at a retail store. (AR 26–27, 43–44, 46–48, 226, 298.) Prior to that, Plaintiff worked at a car wash. (AR 26–27, 44–45, 226, 298.)

## A.    Relevant Medical Evidence[3]

### 1.    Kenneth Goranson, M.D.

An MRI of Plaintiff's lumbar spine performed on January 13, 2006, showed minimal disc bulges at L4–L5 and L5–S1, with no focal disc protrusion or central canal stenosis. (AR 318.) In 2006, while working at a car wash, Plaintiff reportedly injured his right knee. (AR 45, 304–310, 386.) Treating orthopedic surgeon Dr. Goranson completed a "Primary Treating Physician's Permanent and Stationary Report" on November 14, 2006, in which he opined that Plaintiff could occasionally lift and/or carry 40 pounds and frequently 20 pounds; stand and/or walk for less than four hours in an eight-hour workday with no limitation on sitting; occasionally twist; frequently reach, handle, finger, feel, see, hear, and speak; and never climb, balance, stoop, kneel, crouch, and crawl. (AR 306, 310.)

### 2.    Camarena Health Center

On November 28, 2012, Plaintiff presented to Alberto Ruvalcaba, M.D., complaining of intermittent right hip discomfort with ambulation. (AR 369.) Dr. Ruvalcaba prescribed Naproxen and Vicodin and ordered x-rays. (AR 370.) Plaintiff's pelvic x-ray performed on December 13, 2012, showed mild degenerative joint disease of both hip joints in a bilateral and

---

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 7, 9.)

[3] As Plaintiff's assertion of error is limited to the ALJ's consideration of his alleged pain symptoms and the ALJ's assessment of the opinion of Dr. Nancy Cuan, M.D., only evidence relevant to these arguments is set forth below.

symmetrical pattern.  (AR 333, 373.)  An x-ray of Plaintiff's lumbar spine performed that same day showed mild to moderate multilevel degenerative changes.  (AR 334, 374.)

### 3. Dale Van Kirk, M.D.

On August 3, 2013, consultative orthopedic surgeon Dr. Van Kirk reviewed Plaintiff's December 13, 2012, lumbar spine x-ray results and conducted an orthopedic evaluation.  (AR 386–90.)  Plaintiff complained of neck pain with radiation down both arms and low back pain with radiation down both legs.  (AR 386.)  Dr. Van Kirk observed Plaintiff sat comfortably in a chair, got up from the chair and moved around the examination room, got on and off the examination table without difficulty, and detected no limp.  (AR 387–88.)  Plaintiff's Romberg test was normal.  (AR 388.)  Dr. Van Kirk noted that tandem walking with one foot in front of the other is "satisfactory" and that Plaintiff was able to get up on his toes and his heels.  (AR 388.)  Plaintiff was able to squat only one-third of the way down but could not continue due to pain in his right knee.  (AR 388.)  Dr. Van Kirk noted that Plaintiff had a non-prescription lumbar corset at home.  (AR 388.)

Dr. Van Kirk found that Plaintiff had full range of motion in his cervical spine "[s]lowly, but surely," with "slight pain" localized in the mid-cervical spine area.  (AR 388.)  Plaintiff was able to bend over to within eight inches of touching the floor with his long fingers, with the "main pain" in Plaintiff's mid-lumbar area radiating into his waist area posteriorly and into the buttocks bilaterally.  (AR 388.)  Dr. Van Kirk diagnosed Plaintiff with chronic cervical musculoligamentous strain/sprain, likely associated with degenerative disk disease.  (AR 388.)  Plaintiff was also diagnosed with chronic lumbosacral musculoligamentous strain/sprain associated with moderate multilevel degenerative changes, as noted on the x-ray of the lumbar spine dated December 13, 2012.  (AR 389.)

Dr. Van Kirk assessed Plaintiff's residual functional capacity ("RFC")[4] and opined that Plaintiff was limited to standing or walking six cumulative hours out of an eight-hour day, with

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p.  The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments.  *Id.*  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay

no limitation on sitting; lifting and carrying 25 pounds frequently and 50 pounds occasionally; frequent postural activities; and should avoid working in an extremely cold and/or damp environment. (AR 389–90.) According to Dr. Van Kirk, assistive devices are "not medically necessary." (AR 389.) Dr. Van Kirk found no limitations on manipulative activity. (AR 390.)

### 4. Mayview Community Health Center

On October 21, 2013, Plaintiff presented with chest pain. (AR 435.) The attending physician noted Plaintiff's assessment of lumbago and noted that an MRI had been ordered four months ago, but that the radiology department had not contacted Plaintiff. (AR 436.) Plaintiff attended a follow up appointment on May 7, 2014, complaining of continued back and joint pain and "ask[ed] for pain meds. as per usual." (AR 411.) On May 22, 2014, an MRI was performed of Plaintiff's lumbar spine and showed degenerative changes at L4–L5 and L5–S1, with moderately severe right and moderate left foraminal stenosis at L5–S1. (AR 451.) The MRI showed no vertebral body compression fracture or focal suspicious osseous lesion. (AR 451.)

### 5. Los Banos Memorial Hospital

On December 6, 2014, Plaintiff reported to the Emergency Department complaining of neck, low back, and right foot pain resulting from a motor vehicle accident the prior evening. (AR 490, 492.) Plaintiff stated that his neck pain and low back pain is exacerbated by movement and relieved by rest. (AR 492.) He reported taking hydrocodone/acetaminophen (Norco) for pain. (AR 492.) CT scans of Plaintiff's head and cervical spine were performed, which were normal. (AR 495–96, 498.) A CT scan of Plaintiff's lumbar spine showed greater left facet arthropathy than right, with no significant findings. (AR 496, 498.) Plaintiff was prescribed Norco for pain and Valium for muscle spasms. (AR 503.)

### 6. State Agency Physicians

On February 12, 2013, E. Matsuyama, M.D., a Disability Determinations Service medical consultant, assessed Plaintiff's RFC and noted that Plaintiff had some mild degenerative disk disease of the hips and low back that "would qualify him for light RFC." (AR 96–98.) Dr.

---

evidence, and 'the effects of symptoms, including pain that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Matsuyama found that Plaintiff could occasionally lift and/or carry 20 pounds and frequently 10 pounds; stand, walk, and/or sit for about six hours in an eight-hour workday; and perform unlimited pushing/pulling, subject to the lift and carry restrictions. (AR 97.) Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl. (AR 97.) Plaintiff had no manipulative, visual, communicative, or environmental limitations. (AR 98.)

On August 27, 2013, another Disability Determinations Service medical consultant, David Braverman, M.D., affirmed Dr. Matsuyama's RFC findings. (AR 107–109.) Dr. Braverman reviewed new evidence, including Dr. Van Kirk's report dated August 3, 2013, and concluded that there was no change in Plaintiff's condition. (AR 109.)

### 7. Nancy Cuan, M.D.

On January 12, 2015, at Plaintiff's first visit, treating physician Dr. Cuan completed a "Physical Medical Source Statement." (AR 463–65.) After examination and review of MRIs of his lumbar and cervical spine, Plaintiff was diagnosed with peripheral neuropathy and chronic low back and neck pain, with a "fair" prognosis. (AR 463.) Dr. Cuan listed Plaintiff's symptoms as "difficulty sitting, standing, and walking for long periods," and noted that he took pain medications that can cause drowsiness. (AR 463.)

Dr. Cuan stated that Plaintiff's impairments could be expected to last at least twelve months. (AR 463.) Dr. Cuan estimated that Plaintiff could walk less than one block without rest or severe pain. (AR 463.) Plaintiff could sit for 15 minutes at one time and for about two hours total in an eight-hour workday. (AR 463.) Plaintiff could stand and walk for 10 minutes at one time and for less than two hours total in an eight-hour workday. (AR 463.) Dr. Cuan opined that Plaintiff required a job that permitted shifting positions at will from sitting, standing, or walking. (AR 463.) Plaintiff required unscheduled breaks of 20–60 minutes more than five times a day, during which Plaintiff may need to lie down. (AR 465.)

Plaintiff could occasionally lift less than 10 pounds and rarely lift 10 pounds. (AR 464.) Plaintiff could rarely climb stairs. (AR 464.) Plaintiff's reaching was limited to 50% of an eight-hour workday, his fine manipulation was limited to 5% of an eight-hour workday, and his grasping, turning, and twisting was limited to 10% of an eight-hour workday. (AR 464.)

1    Dr. Cuan estimated that Plaintiff was be "off task" more than 25% of the workday, and

2    that he was incapable of even "low stress" at work because his "neuropathic pain greatly affects

3    [his] ability to concentrate on work."  (AR 464.)  According to Dr. Cuan, Plaintiff was likely to

4    be absent from work more than four times a month as a result of his impairments.  (AR 465.)

5    **B.      Plaintiff's Statement**

6        On January 28, 2013, Plaintiff completed an adult function report.   (AR 238–46.)

7    Plaintiff stated that he has problems with his neck, back, and right knee, and that he has pain in

8    his foot, right elbow, right arm, and chest.  (AR 238.)  Plaintiff stated that he has numbness in his

9    toes on his right foot and fingers on his right hand.  (AR 238.)  When asked to describe what he

10   does from the time he wakes up to the time he goes to bed, Plaintiff responded, "nothing much, I

11   can't work, I'm in pain, [I] take my medication."  (AR 239.)  Plaintiff stated that he is in "to [sic]

12   much pain to work now" and that he wakes up and goes to sleep with pain.  (AR 239.)

13       Plaintiff reported that he has trouble bending over and sitting to get dressed, that his

14   ability to bathe and care for his hair is affected because he cannot reach.  (AR 239.)  Plaintiff has

15   trouble moving his neck to shave and has to take his time to feed himself.  (AR 239.)  Plaintiff

16   needs assistance getting up and down to use the toilet.  (AR 239.)  He states he "just feel[s] like

17   doing nothing all day."  (AR 240.)  Plaintiff prepares his own meals of sandwiches and noodles

18   "when feeling ok on a good day," but that his roommate does most of the cooking.  (AR 240.)

19   Plaintiff does not perform other house or yard work because his roommate does the house work

20   and he doesn't have a yard.  (AR 241.)

21       Plaintiff reported that he goes outside "as much as [he] can," drives and rides in a car, and

22   goes shopping for about one hour at a time.  (AR 241.)  Plaintiff is able to pay bills, count

23   change, handle a savings account, and use a checkbook.  (AR 241.)  Plaintiff's interest is

24   watching television, and he reported visiting his family.  (AR 242.)  He can lift 10 pounds, cannot

25   walk far, and can resume walking after 10 to 15 minutes.  (AR 242.)  Plaintiff has a cane, a brace

26   and a splint that he uses "as needed."  (AR 244.)  Plaintiff reported taking medications with no

27   side effects.  (AR 245.)

28   ///

**C.     Administrative Proceedings**

The Commissioner denied Plaintiff's applications for benefits initially on February 13, 2013, and again on reconsideration on August 27, 2013.  (AR 112–16, 118–22.)  Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 123–28.)  At the hearing on February 24, 2015, Plaintiff appeared with counsel and testified before an ALJ as to his alleged disabling conditions.  (AR 36–82.)

**1.     Plaintiff's Testimony**

Plaintiff testified that his neck pain and back pain prevent him from working, and that he feels "constant[]" pain "all through [his] body."  (AR 50, 69.)  His lower back pain is a sharp, "straight" pain that "just stays there" and radiates into his legs intermittently.  (AR 51–52.)  Plaintiff testified that sitting, standing, or walking causes him pain in his lower back and "nothing helps" relieve the pain.  (AR 52–54.)  He stated is he more comfortable when he lies down.  (AR 54.)  Plaintiff rated his pain a "10" out of 10.  (AR 55.)  Plaintiff testified that cold weather makes his pain worse and that hot weather makes him "uncomfortable."  (AR 81.)

With regard to his neck pain, Plaintiff testified that his neck was "swollen" and the pain traveled to his shoulders, arms, and hands.  (AR 55.)  Plaintiff testified that his hands get numb and he "can't hold things" or "grip things."  (AR 50, 56.)  The numbness in his hands causes him sometimes to drop things.  (AR 72.)  Plaintiff also has numbness in his feet that his doctor attributes to both his neck pain and diabetes.  (AR 56.)  He testified he has chest pain that feels like tightness and occurs about once a month.  (AR 59–60.)

Plaintiff testified he sees Dr. Cuan about once a month and continues to take Norco for pain, which makes him drowsy and feel dizzy.  (AR 62, 64.)  The medication impairs his ability to concentrate, which he estimates he can do for 15 or 20 minutes at the most.  (AR 70–71, 81.)  No surgery has been recommended, and Plaintiff has neither received any injections in his back or hip for pain, nor used a TENS unit.  (AR 65, 67.)  Plaintiff has a cane but he "tr[ies] not to" use it and uses furniture or walls for balance.  (AR 67.)

Plaintiff testified he can walk about a block without resting for an hour or more.  (AR 71–72.)  He stumbles occasionally when he walks.  (AR 68.)  Plaintiff can lift about 5 to 10 pounds.

(AR 72.)  He cannot reach forward or overhead due to back in his neck, shoulders, and back. (AR 73.)  Plaintiff testified he cannot bend at his waist without pain.  (AR 73.)  He cannot kneel, crouch, or crawl.  (AR 74.)

Plaintiff lives in an upstairs apartment with his girlfriend, who is on disability.  (AR 40.) When asked what he does in a typical day, Plaintiff testified: "I just lie there when I first wake up, get my body to function, and that's about it . . . I don't do much."  (AR 74.)  He testified he has difficulty sleeping due to pain.  (AR 75.)  He testified that he has problems showering and that it "takes a long time."  (AR 75.)  He sometimes needs help getting dressed and that he usually wears sandals to avoid tying shoes.  (AR 76–77.)  Plaintiff tied his shoes without assistance for the hearing because it's "something [he] had to do."  (AR 77.)  He testified he does not do any chores around the house, and will sometimes accompany his girlfriend to the grocery store.  (AR 78.)  Plaintiff visits his mother about once a week.  (AR 79.)  He watches television during the day and takes a 15 to 30-minute nap every hour.  (AR 80.)

### 2.    Vocational Expert's Testimony

A Vocational Expert ("VE") testified at the hearing that Plaintiff had the following past work as a retail industry stock clerk, Dictionary of Operational Titles (DOT) code 299.367-014, which was heavy exertional work, semi-skilled, with a specific vocational preparation (SVP)[5] of 4; as a store laborer, DOT 922.687-058, medium to heavy as performed, unskilled, SVP 2; and as a car wash attendant, DOT 915.667-010, light, unskilled, SVP 2.  (AR 84.)  The ALJ asked the VE to consider a person of Plaintiff's age, education, and past work history.  (AR 84.)  The VE was also to assume this person is limited to a medium range of work, frequent postural activities, and must avoid exposure to extreme cold and damp environments.  (AR 84.)  The VE testified that the only past work held by Plaintiff that such a person could perform would be the store laborer, only per the DOT and not as performed.  (AR 84.)  The ALJ posed a second hypothetical regarding a person of Plaintiff's age, education, and past work history, but who was limited to

---

[5] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.  DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation).  *Id*.

light work.  (AR 84.)  The VE testified that such a person could not perform Plaintiff's past work, but could perform other jobs in the economy at the light level, such as an usher in a theater, DOT 344.677-014, light, unskilled, SVP 2; a ticket taker, DOT 344.677-010, light, unskilled, SVP 2; and a counter clerk, DOT code 249.366-010, SVP 2.  (AR 85.)  The ALJ asked the VE to consider the same hypothetical but limit the postural activities to occasional, and the VE testified that the same jobs would be available.  (AR 86.)  The ALJ posed a final hypothetical regarding a person of Plaintiff's age, education, and past work history, but who was limited to sedentary jobs; lifting less than 10 pounds occasionally; sitting, standing, and/or walking for only two hours out of an eight-hour day; must be able to shift positions at will; never twisting, stooping, crouching, climbing ropes, ladders, or scaffolds; rarely climbing stairs and ramps; rarely using bilateral upper extremities for handing or fingering; frequent bilateral reaching; is expected to be off task 25 percent or more of the day; and must take at least five unscheduled 20 to 60-minute breaks during the day during which time the hypothetical individual may need to lie down.  (AR 87.) The hypothetical individual would also be expected to be absent four or more times a month and would be limited to simple, routine, and repetitive tasks without any face-paced production requirements.  The VE testified that there would be no work such person could perform.  (AR 87.)

Plaintiff's attorney asked the VE to consider same hypothetical person as presented in the ALJ's first hypothetical, with the exception that the person would need one additional unscheduled break of one hour per day.  (AR 87.)  The VE testified that no jobs were available for that person.  (AR 87–88.)  Plaintiff's counsel then asked the VE to consider the same hypothetical person as presented in the ALJ's third hypothetical but include the additional limitation that the person would be off task approximately 15 percent of the time.  (AR 88.)  The VE testified that no jobs were available for that person.  (AR 88.)

**D.     The ALJ's Decision**

In a decision dated April 1, 2015, the ALJ found that Plaintiff was not disabled.  (AR 19–28.)  The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920.  (AR 21–28.)  The ALJ decided that Plaintiff had not engaged in substantial gainful activity since

September 26, 2012, the application date.  (AR 21.)  The ALJ found that Plaintiff had the severe impairments of (1) degenerative changes of the lumbar spine at L4–L5 and L5–S1; (2) mild disc desiccation of the cervical spine at C3–C4 and C5–C6; and (3) degenerative joint disease of the bilateral hips.  (AR 21.)  However, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings").  (AR 21–23.)  The ALJ determined that Plaintiff had the RFC

> to perform light work as defined in 20 CFR [§] 416.967(b), except that he can occasionally climb, balance, stoop, kneel, crouch, and crawl. [Plaintiff] must also avoid exposure to extreme temperatures and damp environments.

(AR 23.)

The ALJ found that, given his RFC, Plaintiff was unable to perform any past relevant work, but that Plaintiff was not disabled because he could perform a significant number of other jobs in the local and national economies, specifically usher, ticket taker, and counter clerk.  (AR 26, 28.)  In reaching her conclusions, the ALJ also determined that Plaintiff's subjective complaints were not entirely credible.  (AR 26.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on July 20, 2016.  (AR 2–8.)  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. § 416.1481.

### III.    SCOPE OF REVIEW

The Court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007), quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving

ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

## IV. APPLICABLE LAW

Social security claimants have the initial burden of proving disability. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5. An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)–(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting him from performing basic work activities. *Id*. § 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id*. § 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past work. *Id*. § 416.920(f). If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national

economy. *Id.* § 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999); 20 C.F.R. § 416.920.

## V.    DISCUSSION

Plaintiff contends that the ALJ erred in two ways. First, Plaintiff claims the ALJ failed to articulate clear and convincing reasons for discounting Plaintiff's testimony regarding his subjective complaints of pain. (*See* Doc. 15 at 12–14; Doc. 17 at 3–6.) Second, Plaintiff asserts the ALJ erred in his treatment of the medical opinion of treating physician Dr. Cuan. (*See* Doc. 15 at 14–17; Doc. 17 at 7–8.)

Defendant counters that the ALJ properly relied on evidence in the record that undermined the credibility of Plaintiff's allegations of disabling symptoms and limitations, and that the rejection of Dr. Cuan's opinion was not erroneous because this opinion was unsupported by and inconsistent with the medical evidence. (*See* Doc. 16 at 5–11.)

**A.    The ALJ Erred By Failing to Articulate Specific, Clear and Convincing Reasons to Discredit Plaintiff's Subjective Complaints of Pain.**

**1.    Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if he gives "specific, clear and convincing reasons" for the rejection. *Id.* As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti,* 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray,* 554 F.3d at 1226–27; 20 C.F.R. § 404.1529. Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not sufficient to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996)).

**2. Analysis**

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 26.) The ALJ also found that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (AR 26.) Since the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding. *See Vasquez*, 572 F.3d at 591.

Here, the sole reason for rejecting Plaintiff's allegations of disabling pain, symptoms, and limitations was that "the objective evidence . . . does not suggest [Plaintiff's] impairments, either singly or in combination, are so debilitating as to preclude all work activity." (AR 26.) The ALJ did not specify ***what*** medical evidence in the record contradicts Plaintiff's subjective complaints.

Instead, the ALJ merely concluded that, in view of the "objective evidence" Plaintiff's "allegation of extremely limited activities of daily living" and "approximation of pain as 'constant' and at a 'ten' on the pain scale" appears to be "overstated." (AR 26.) In citing to medical evidence as part of a credibility analysis, it is not sufficient for the ALJ to make a general statement that the testimony is contradicted by the record. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("general findings are an insufficient basis to support an adverse credibility determination"). Instead, the ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Id. See also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884–85 (9th Cir. 2006) (reversing Commissioner when ALJ did not provide "narrative discussion" with sufficiently specific reasons for discounting claimant's statements).

Moreover, although medical evidence is a factor that the ALJ can consider regarding Plaintiff's credibility analysis, an ALJ "may not reject a claimant's subjective complaints based *solely* on lack of objective medical evidence to fully corroborate the alleged severity of pain." *Rollins v. Massanari*, 261 F.3d 853, 856–57 (9th Cir. 2001) (emphasis added); *see also Burch*, 400 F.3d at 681 (noting that "lack of medical evidence cannot form the sole basis for discounting pain testimony"). Thus, even if the ALJ had adequately explained what "objective evidence" undermined Plaintiff's "allegation of extremely limited activities of daily living" and "approximation of pain as 'constant' and at a 'ten' on the pain scale," remand is still warranted because the ALJ failed to give any other clear and convincing reason for discounting Plaintiff's credibility. *See Henderson v. Colvin*, No. 1:14-cv-01161-LJO-SKO, 2016 WL 145571, at *16 (E.D. Cal. Jan. 12, 2016) (remanding for further consideration because the ALJ's only basis for rejecting Plaintiff's physical pain testimony was inconsistency with the medical evidence, which is "insufficient."); *Figueroa v. Colvin*, Case No. CV 14–06522 (GJS), 2015 WL 4331300, at *2 (C.D. Cal. July 15, 2015) (remanding for further proceedings because ALJ failed to provide clear and convincing reasons for discounting claimant's credibility "apart from the lack of objective medical evidence"); *Osborn v. Colvin*, No. C13–1948–RSM, 2014 WL 5514195, at *10–11 (W.D. Wash. Oct. 30, 2014) (remanding for reevaluation of claimant's credibility where ALJ

found claimant not entirely credible based on the objective medical evidence, and ALJ's remaining reasons for rejecting credibility were inadequate); *Caballero v. Colvin*, No. ED CV 12–1366–SP, 2013 WL 2121253, at *4 (C.D. Cal. May 14, 2013) (remanding for further proceedings because ALJ erred in rejecting plaintiff's testimony based on daily activities, and remaining reason, lack of objective medical evidence, "[could not] alone constitute a clear and convincing reason for discounting plaintiff's complaints of pain").

Accordingly, the ALJ's general dismissal of Plaintiff's subjective complaints due to lack of objective medical evidence does not, by itself, constitute a clear and convincing reason for discrediting his testimony, and remand on this issue is required. *See Varney v. Secretary*, 846 F.2d 581, 584 (9th Cir. 1988); *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986); *see also Burch*, 400 F.3d at 681. The Court therefore finds that the ALJ failed to provide sufficient reasons for rejecting Plaintiff's credibility, and Plaintiff is entitled to remand on this ground.

**B.     The ALJ Erred in Her Assessment of the Opinion of Dr. Cuan.**

**1.     Legal Standard**

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Holohan*, 246 F.3d at 1201–02; *Lester*, 81 F.3d at 830. Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. *Holohan*, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830–31. . If a treating doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing "specific and legitimate reasons that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017), as amended (Sept. 14, 2017), (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)); see also Lester, 81 F.3d at 830. "The ALJ can meet this burden by setting out a detailed and thorough

summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Trevizo*, 871 F.3d at 675 (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)) The regulations require the ALJ to weigh the contradicted treating physician opinion, *Edlund*, 253 F.3d at 1157,[6] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); *see also Magallane*s, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. *Lester*, 81 F.3d at 831.

## 2. Analysis

Plaintiff was examined by Dr. Cuan for the first time on January 12, 2015, after which she completed a "Physical Medical Source Statement." (AR 463–65.) Dr. Cuan diagnosed Plaintiff with peripheral neuropathy and chronic low back and neck pain. (AR 463.) Her clinical findings included that Plaintiff could sit for 15 minutes at one time and for about two hours total in an eight-hour workday, that Plaintiff could stand and walk for 10 minutes at one time and for less than two hours total in an eight-hour workday, and that Plaintiff could occasionally lift less than 10 pounds and rarely lift 10 pounds. (AR 463, 464.) Dr. Cuan also found that Plaintiff required a job that permitted shifting positions at will from sitting, standing, or walking, and that Plaintiff required unscheduled breaks of 20–60 minutes more than five times a day, during which he may need to lie down. (AR 463, 465.) Dr. Cuan opined that Plaintiff's reaching was limited to 50% of an eight-hour workday, his fine manipulation was limited to 5% of an eight-hour workday, his grasping, turning, and twisting was limited to 10% of an eight-hour workday, and that he could rarely climb stairs. (AR 464.) She estimated that Plaintiff was be "off task" more than 25% of the workday, and that he was incapable of even "low stress" at work because his "neuropathic pain greatly affects [his] ability to concentrate on work." (AR 464.) According to Dr. Cuan, Plaintiff was likely to be absent from work more than four times a month as a result of his impairments. (AR 465.) Dr. Cuan's prognosis for Plaintiff was "fair" and she opined that

---

[6] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

Plaintiff's impairments could be expected to last at least twelve months. (AR 463.)

In rejecting Dr. Cuan's opinion, the ALJ stated:

> I accord little weight to Dr. Cuan's assessment because it is not supported by the medical evidence of record, and instead appears to be based primarily on [Plaintiff's] subjective complaints of pain. Furthermore, Dr. Cuan does not adequately articulate the bases for her conclusions and only provides statements of limitations and vague opinions. I found her opinion grossly overstated considering she examined [Plaintiff] on one occasion only and briefly reviewed some of the medical records. Furthermore, her opinion is not consistent with the other medical opinions of record or the objective treatment history.

(AR 25.) The ALJ rejected Dr. Cuan's opinion because, among other things, it was "not consistent with the other medical opinions of record"—presumably those of Disability Determinations Service medical consultants Drs. Matsuyama and Braverman, to which the ALJ accorded "great weight."[7] (AR 26.) Drs. Matsuyama and Braverman both opined that Plaintiff could occasionally lift and/or carry 20 pounds and frequently 10 pounds and could stand, walk, and/or sit for about six hours in an eight-hour workday. (AR 26, 96–98, 107–09.) Having found that Dr. Cuan's opinion conflicted with that of Drs. Matsuyama and Braverman, the ALJ was obliged to provide specific and legitimate reasons for rejecting the latter. *Trevizo*, 871 F.3d at 675. She failed to do so.

The ALJ rejected Dr. Cuan's opinion because it was "vague," conclusory, and "not supported by the medical evidence of record" and believed that the opinion was "based primarily on [Plaintiff's] subjective complaints of pain" and "grossly overstated considering she examined [Plaintiff] on one occasion only and briefly reviewed some of the medical records." (AR 25.) This explanation cannot withstand scrutiny.

Generally speaking, an ALJ may properly discount a treating physician's opinion that is conclusory and not supported by the medical record. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (noting that "an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, . . . or by

_____

[7] The ALJ stated that Dr. Cuan's opinion was "not consistent with the other medical opinions of record," but she did not explain what she meant or to what "other medical opinions of record" she was referring.

objective medical findings") (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.") (citing *Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)). An ALJ can also reject a treating doctor's opinion that is based on a claimant's subjective complaints where the ALJ finds that those complaints are not credible. *See Morgan v. Comm'r, Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (affirming ALJ's rejection of treating physicians' unsupported and inconsistent opinions that relied on claimant's own testimony).

Here, however, there are at least two problems with the ALJ's reliance on those two factors. First, as explained above, the ALJ erred in her credibility analysis of Plaintiff. (*See* Section V.A, *supra*.) Second, the ALJ did not explain what "medical evidence of record" or "objective treatment history," other than Drs. Matsuyama's and Braverman's opinions, conflicted with Dr. Cuan's report. *See Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988) ("To say that the medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required. . . ."); *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir.1986) (when an ALJ believes a treating physician's opinion is unsupported by the objective medical evidence, the ALJ must "set[ ] out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings"). Although it may be that much of the evidence in the record does not support the functional limitations found by Dr. Cuan, the ALJ does not clearly—or indeed at all—link that evidence to her evaluation of those limitations. Without any such discussion, the Court is unable to determine whether the ALJ properly considered that evidence in rejecting those limitations, and thus that rejection cannot be upheld at this time. *See Trevizo* , 871 F.3d at 677 n.4 (9th Cir. 2017) ("[T]he ALJ was not entitled to reject the responses of a treating physician without specific and legitimate reasons for doing so, even where those responses were provided on a 'check-the-box' form, were not accompanied by comments, and did not indicate to the ALJ the

basis for the physician's answers.) (citing *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)); *Kinzer v. Colvin*, 567 F. App'x 529, 530 (9th Cir. 2014) (ALJ's statements that treating physicians' opinions "contrasted sharply with the other evidence of record" and were "not well supported by the . . . other objective findings in the case record" held insufficient); *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989) ("broad and vague" reasons for rejecting treating physician's opinions do not suffice); *Embrey*, 849 F.2d at 421.

The ALJ's rejection of Dr. Cuan's "grossly overstated" opinion because she had "examined [Plaintiff] on one occasion only" is also improper. Although the Commissioner asserts the ALJ properly discounted Dr. Cuan's opinion on this basis (*see* Doc. 16 at 10), this is not a legitimate reason for rejecting the opinion of Plaintiff's treating physician. While an ALJ may properly consider the length of treatment and the frequency of examinations in assessing what weight to give a treating source's opinion, *see* 20 C.F.R. § 404.1527(c)(2)(i), the presence of a limited treatment relationship cannot alone constitute a legitimate reason for rejecting a treating source's opinion.[8] *See Cox v. Berryhill*, No. 2:15-cv-2221 AC, 2017 WL 714384, at *6–7 (E.D. Cal. Feb. 23, 2017) ("[T]he rules state that a treating relationship can be established so long as the treating visits are consistent with the type of treatment, and can be as infrequent as two times per year. The Commissioner does not explain why it makes any sense, or could be within the meaning of the regulations, to accept a doctor as a treating source even though she only sees the patient twice a year, but to then reject the opinions offered on the grounds that the doctor only sees the patient twice a year.") (internal citations omitted); *Cherease Shanta Scott Daniels v. Colvin*, No. CV 15–01838–RAO, 2016 WL 797545, at *5–6 (C.D. Cal. Feb. 29, 2016); *Trepanier v. Colvin*, No. CV 13–9027–DFM, 2014 WL 4236944, at *4 (C.D. Cal. Aug. 26, 2014) ("[T]he fact that Dr. Qazi saw Plaintiff only three times is not alone a sufficient basis

---

[8] To hold otherwise would render the opinion of an examining physician worthless. If a limited treating relationship constituted a legitimate reason for rejecting an opinion from a treating or examining source, an opinion from an examining source would always be rejected because the relationship between a claimant and an examining physician is generally limited to a single examination. *See Grayson v. Astrue*, No. 2:11–cv–1656–EFB, 2012 WL 4468406, at *5 (E.D. Cal. Sept. 25, 2012) (citing *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (holding that while a limited treating relationship may be a valid reason for not according a treating physician's "findings the conclusive weight of a treating medical-source opinion, . . . it is not by itself a basis for rejecting them – otherwise the opinions of consultative examiners would essentially be worthless . . . .")). Opinions from examining sources, however, are often relied upon by ALJs in determining whether a claimant is disabled.

to reject his opinion outright . . . ."); *Bayze v. Colvin*, No. CIV 12–768–TUC–CKJ, 2014 WL 2113097, at \*3 (D. Ariz. May 21, 2014). Here, Dr. Cuan's opinion was based not only on a single exam but also on Plaintiff's lumbar and cervical spine MRI results (*see* AR 463), and the basis for her findings and the reasons for her conclusions are set out in her reports. (*See* AR 463–65.) The ALJ did not state any reason why Dr. Cuan could not have arrived at her opinions after an examination and review of the objective testing, and her opinion should not have been summarily dismissed on this basis. Accordingly, the short duration of treatment provided by Dr. Cuan does not constitute a legitimate reason for rejecting, or according "little weight" to, her opinion.

Finally, the only remaining reason the ALJ gave for rejecting Dr. Cuan's opinion was that it was "not consistent with the other medical opinions of record." (AR 25.) Again, to the extent that the ALJ found Dr. Cuan's opinion contradicted by the opinions of the state agency physicians Drs. Matsuyama and Braverman, the opinions of nonexamining doctors "cannot by [themselves] constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Revels v. Berryhill*, 874 F.3d 648, 664 (9th Cir. 2017) (quoting *Lester*, 81 F.3d at 831). *See also Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012) (same).

In sum, the ALJ erred in failing to provide specific and legitimate reasons supported by substantial evidence for giving "little weight" to the opinion of Plaintiff's treating physician, Dr. Cuan.

**C.    Remand for Further Proceedings is Appropriate.**

A district court may "revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing," *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citing 42 U.S.C. § 405(g)) (alteration in original), but "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation," *id.* (citation omitted). Ninth Circuit case law "precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (citing *Burrell*, 775 F.3d at 1141). "The

district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence." *Id.* "If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved." *Id.* (citing *Treichler*, 775 F.3d at 1101). In so doing, the court "must consider whether there are inconsistencies between [the claimant's] testimony and the medical evidence in the record, or whether the government has pointed to evidence in the record that the ALJ overlooked and explained how that evidence casts into serious doubt the claimant's claim to be disabled." *Id.* (internal quotation marks omitted) (citing *Burrell*, 775 F.3d at 1141). Unless the court "concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits." *Id.*

If, however, the court determines that the record has, in fact, been fully developed and there are no outstanding issues left to be resolved, then it next must consider whether "the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true." *Dominguez*, 808 F.3d at 407 (quoting *Garrison*, 759 F.3d at 1020). Put another way, the court must consider the testimony or opinion that the ALJ improperly rejected, in the context of the otherwise undisputed record, and determine whether the ALJ would necessarily have to conclude that the claimant were disabled if that testimony or opinion were deemed true. If so, the court may exercise its discretion to remand the case for an award of benefits. *Id.*

Courts are not required to exercise such discretion. *Id. See also Connett*, 340 F.3d 871, 874–76 (9th Cir. 2003); *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Instead, they "retain 'flexibility' in determining the appropriate remedy [.]" *Burrell*, 775 F.3d at 1141 (quoting *Garrison*, 759 F.3d at 1021). Specifically, the court "may remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" *Burrell*, 775 F.3d at 1141 (quoting *Garrison*, 759 F.3d at 1021).

//

1    Applying these principles here, the Court's conclusion that the ALJ erred in (1)
2    discounting Plaintiff's credibility and (2) rejecting Plaintiff's treating physician's opinion without
3    adequate explanation meets the threshold requirement of legal error in failing to provide legally
4    sufficient reasons for rejecting evidence. *See Dominguez*, 808 F.3d at 408. The next question is
5    whether the record has been fully developed and further administrative proceedings would serve
6    no useful purpose. *Id.* (citation omitted). This is not the case here. The medical record leaves
7    open the question of Plaintiff's exact disability status. For example, it contains evidence
8    suggesting that Plaintiff may be capable of working: several of his impairments are described as
9    mild or moderate (AR 333–34, 373–74, 389, 451), the consultative orthopedic surgeon and state
10   agency physicians found him capable of working with some limitations (AR 96–98, 107–09,
11   389–90), and Plaintiff testified at the hearing that, after his alleged onset date, he was laid off
12   from his job at a retail warehouse due to the "seasonal" nature of the position and that he sought
13   other jobs but could not "find work anywhere" and "[n]obody would hire me anymore" (AR 47–
14   50), which calls into question the veracity of his statements that he is unable to work due to her
15   physical limitations. *See, e.g., Alonzo v. Colvin*, No. 1:14-CV-00460-SKO, 2015 WL 5358151,
16   at *18 (E.D. Cal. Sept. 14, 2015).

17   In addition, where an ALJ fails to "give sufficiently specific reasons for rejecting the
18   conclusion of [a physician]," it is proper to remand the matter for "proper consideration of the
19   physician['s] evidence." *See Embrey*, 849 F.2d at 422 (remanding for further proceedings where
20   ALJ rejected opinion of treating physician but did not relate objective factors on which he relied
21   to opinion rejected); *see also Nguyen v. Chater*, 100 F.3d 1462, 1464–65, 1467 (9th Cir.1996)
22   (remanding for further proceedings where ALJ failed to "set forth specific, legitimate reasons"
23   for crediting opinion of nonexamining consultant over that of examining psychologist). As the
24   Commissioner correctly points out, there are inconsistencies among the recommendations of the
25   various physicians (*see* Doc. 16 at 7), and there are some issues that may lead an ALJ to weigh
26   parts of the opinions more heavily than others.

27   Accordingly, the Court exercises its discretion and remands this matter to the ALJ for
28   further proceedings and consideration of the record because "[t]here may be evidence in the

record to which the [ALJ] can point to provide the requisite" reasons for discounting Plaintiff's credibility and rejecting the opinion of Dr. Cuan and the "Secretary is in a better position than this court to perform this task."[9] *See McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989) (remanding to allow the Secretary to review the record and provide legally sufficient reasons for rejecting the treating physician's report and, alternatively, permitting the Secretary to award benefits). On remand, the ALJ shall properly consider the medical evidence as a whole, including the opinion of Dr. Cuan, and must either credit Plaintiff's subjective symptom testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's credibility. The ALJ shall then assess Plaintiff's RFC and proceed through Steps Four and Five to determine what work, if any, Plaintiff is capable of performing.

## VI.    CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further proceedings consistent with this Order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Luster B. Daily, Jr. and against Defendant Nancy A. Berryhill, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:    **February 6, 2018**                    /s/ *Sheila K. Oberto*
                                                    UNITED STATES MAGISTRATE JUDGE

---

[9] Even if the Court were to find the record fully developed and credited Plaintiff's testimony as true, however, his entitlement to benefits is not clear from the existing record. Plaintiff testified that he suffers from severe limitations, which would appear to make it unlikely that Plaintiff can work. (*See, e.g.*, AR 50, 56, 71–74, 242.) However, there is no vocational expert opinion of disability corresponding to Plaintiff's testimony. Without confirmation from a vocational expert, the Court is unwilling to conclude that a person with such limitations could not work. *See, e.g., See Agnew–Currie v. Astrue,* 875 F. Supp. 2d 967, 973–74 (D. Ariz. 2012) (remanding for further proceedings because there was no testimony from the vocational expert that the limitations established by the record would render Plaintiff unable to engage in any work).